NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX GARCIA, LUZ GARCIA<br><br>Plaintiffs,<br><br>v.<br><br>JERRY SPEZIALE, Individually and in his official capacity as Passaic County Sheriff, COUNTY OF PASSAIC<br><br>Defendants. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>No. 2:10-cv-02637 (DMC) (MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon a Motion for Summary Judgment by Jerry Speziale, individually and in his official capacity as Passaic County Sheriff, County of Passaic ("Defendant") against Felix Garcia and Luz Garcia ("Plaintiffs") as to all counts in the Complaint. For the reasons stated below, Defendant's Motion for Summary Judgment is **granted in part and denied in part**.

I. **BACKGROUND**[1]

Felix Garcia ("Mr. Garcia") was employed by the Passaic County Sherriff's Office ("PCSO") in various positions from approximately 1972 until February 2003. At all relevant times, Defendant was the Passaic County Sheriff. Defendant alleges that in 2002, the New Jersey Attorney General's Office carried out an investigation against Mr. Garcia and uncovered evidence that he abused his police powers while acting as Warden of the Passaic County Jail by asking employees to do personal favors for him and threatening them with disciplinary action if

---
[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective briefs.

1

they refused. Mr. Garcia resigned from his employment in February 2003 and subsequently filed a civil action in this Court, alleging that Defendant unlawfully discriminated against him on the basis of his ethnicity and ancestry as a Latino American in violation of New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"). Mr. Garcia also claimed that he was discriminated against based on his prior association with the Republican party and due to his political activism in planning and promoting corrective actions regarding Defendant's alleged unlawful discrimination against minorities in the workplace. The case settled before trial on May 20, 2008 for an undisclosed amount.

Mr. Garcia presently claims that Defendant began to retaliate against him after the first suit was settled, in violation of the NJLAD, the First Amendment of the United States Constitution, and Article 1, Sections 6 and 18 the New Jersey Constitution. He claims that Defendant disparaged and defamed him in the community through false and malicious accusations of wrongdoing, violated his right to privacy by authorizing a surveillance of his political activities, and wrongfully denied his application to obtain a Retired Law Enforcement Officer Permit to Carry a Handgun. Further, he claims that he was retaliated against when his wife, Luz Garcia ("Mrs. Garcia"), was terminated from her position at PCSO after two articles about the 2008 settlement came out on May 20, 2008 and May 23, 3008. After her termination, Mrs. Garcia and four other former employees of PCSO previously brought an action before the Office of Administrative Law, appealing their layoffs. An administrative law judge found that the layoffs were made in good faith and the Civil Service Commission adopted the judge's decision. Mrs. Garcia is presently claiming that she was unlawfully retaliated against in violation of the NJLAD after her husband's case was settled.

Plaintiffs filed the Complaint on May 24, 2010 ("Compl.," ECF No. 1). Defendant filed

this Motion for Summary Judgment on January 31, 2013 ("Def.'s Mot.," ECF No. 53). Plaintiffs filed a Brief in Opposition on February 28, 2013 ("Pl.'s Opp'n," ECF No. 55).

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56, summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC, 877 F. Supp. 2d 140, 147 (D.N.J. 2012) (citing Anderson, 477 U.S. at 256-57). To do so, "[a] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." Id. (citing Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Plaintiff Felix Garcia's Claims

### 1) First Amendment Retaliation

Counts I of the Complaint alleges that Defendant is liable under a theory of supervisory liability for First Amendment retaliation in violation of 42 U.S.C. § 1983. To succeed on a First Amendment retaliation claim a plaintiff must show that "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). The filing of a lawsuit is considered a protected activity. Meenan v. Harrison, 264 F. App'x 146, 152 (3rd Cir. 2008). A plaintiff can prove the second factor by showing "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action . . . a pattern of antagonism coupled with timing to establish a causal link . . . [or] from evidence taken from the record as a whole." Revell v. City of Jersey City, 394 F'Appx 903, 906 (3rd Cir. 2010). However, "conclusory allegations of retaliation . . . without any additional evidence . . . are insufficient to plausibly demonstrate that a genuine issue of material fact exists." Jackson v. Beard, 365 F'Appx 332, 333 (3rd Cir. 2010). Additionally, the Third Circuit has stated that criticism and false accusations do not rise to the level of retaliation. Revell, 394 F'Appx at 906.

In the instant case, Mr. Garcia claims that Defendant retaliated against him in order to punish him for filing the 2004 lawsuit (Compl. ¶ 19). Mr. Garcia alleges that Defendant's retaliatory actions include causing Mrs. Garcia to be unlawfully terminated,[2] disparaging and defaming him in the community through false and malicious accusations of wrongdoing,

---

[2] Mr. Garcia has standing based on the termination of Mrs. Garcia because "the Third Circuit [has] recognized in the employment context that retaliation against a family member is an ancient method of revenge used to chill protected rights. Shankle v. Bell, No. 2:04CV1885, 2006 WL 2794559, at *4 (W.D. Pa. Sept. 27, 2006).

4

violating his right to privacy, and refusing to endorse his application to obtain a Retired Law Enforcement Officer Permit to Carry a Handgun. (Id. ¶ 20). Mr. Garcia's claims that he was disparaged and defamed in the community must fail because they do not rise to the level of retaliation. As for his claims that his right to privacy was violated and his handgun application was wrongfully denied, Mr. Garcia has presented no evidence linking these events to the filing of his 2004 lawsuit. See Viola v. Borough of Throop, 387 F. App'x 219, 222 (3rd Cir. 2010) (affirming the district court's grant of summary judgment when the plaintiff presented no evidence that a jury could find that the protected activity was a substantial motivating factor in the defendant's alleged retaliatory action). However, a genuine issue of material fact exists as to whether Mrs. Garcia was terminated in retaliation for the 2004 lawsuit. The suit was settled out of court on May 20, 2008, and articles regarding the suit were published on May 20, 2008 and May 23, 2008 (Pl.'s Opp'n, Ex. 7). Mrs. Garcia claims that she was notified of her termination on May 23, 2008 (Id.). Defendant, however, claim that she was notified of her termination on May 14, 2008, six days before the first article was even published (Def's Mot. ¶ 27). This dispute over the timing of Mrs. Garcia's termination presents a genuine issue of material fact regarding whether she was terminated in retaliation for her husband's settlement. See Ambrose v. Township of Robinson, Pa., 303 F.3d 488, 494 (3rd Cir. 2002) (stating that "suggestive timing" is relevant in retaliation cases). Accordingly, Summary Judgment is denied.

2) **Violation of the New Jersey Constitution**

Count III of the Complaint alleges that Defendant violated Mr. Garcia's rights under Article I, Sections 6 and 18 of the New Jersey Constitution. Although Defendant has indicated that he is moving for Summary Judgment on Plaintiffs' entire Complaint (Def.'s Mot. at 3), he does not address Plaintiffs' state constitutional claims in his brief. Therefore, Summary

Judgment is denied.

### 3) Violation of Public Policy

Count IV of the Complaint alleges that Defendant's retaliatory actions were taken "in violation of New Jersey's public policy against unlawful retaliation actions by government officials against public employees for participating in protected political activities and affiliation" (Compl. ¶ 41). Mr. Garcia has not provided any information regarding this claim other than several vague and conclusory sentences in the Complaint. Mr. Garcia's Opposition is equally vague, limited to three sentences in which he simply claims that he is not required to present evidence and prove his allegations in order to survive summary judgment (Pl.'s Opp'n at 41). Therefore, Mr. Garcia has not met his burden of showing that a genuine issue of material fact exists, and Summary Judgment is granted.

### 4) Retaliation in Violation of the NJLAD

Count VI of the Complaint alleges that Defendant unlawfully retaliated against Mr. Garcia in violation of the NJLAD after Mr. Garcia settled his civil suit with Defendant. Mr. Garicia claims that Defendant disparaged his reputation, violated his right to privacy, and arbitrarily and capriciously denied his application for a permit to carry a handgun as a retired law enforcement officer.

To make out a prima facie case of retaliation under the NJLAD, a plaintiff must show that "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001). The NJLAD was created to "prohibit discrimination in the context of an employer/employee

relationship." Thomas v. Cnty. of Camden, 902 A.2d 327, 334 (N.J. Super. Ct. App. Div. 2006) (quoting Pukowsky v. Caruso, 711 A.2d 398, 405 (N.J. Super. Ct. App. Div. 1998)). Therefore, "the lack of an employment relationship between the plaintiff and the defendant will preclude liability." Amentler v. 69 Main St., LLC, No. CIV.A. 08-351, 2012 WL 28194, at *9 (D.N.J. Jan. 3, 2012) (quoting Thomas v. Cnty. of Camden, 902 A.2d 327, 334 (N.J. Super. Ct. App. Div. 2006)).

In the instant case, Mr. Garcia is suing based on events that occurred *after* his employment with PCSO ended. Mr. Garcia has not worked for PCSO since 2003 and as he admits, the alleged activities complained of did not begin until 2008 (Pl.'s Opp'n at 17-18). The alleged discriminatory acts that occurred *during* Mr. Garcia's employment were resolved in the 2008 settlement. Therefore, Mr. Garcia has failed to establish that the NJLAD applies, and summary judgment is granted.

### B. Plaintiff Luz Garcia's Claim

Count V of the Complaint alleges that Luz Garcia was unlawfully retaliated against under the NJLAD when she was terminated from her employment with PCSO. Defendant allege that this claim is barred by collateral estoppel.

The Supreme Court has concluded that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII[3] claims." University of Tennessee v. Elliot, 478 U.S. 788, 796 (1986). All courts of appeals have adopted this approach. See Roth v. Koppers Indus., Inc., 993 F.2d 1058, 1062 (3d Cir. 1993) ("Following Elliot, the courts of appeals have unanimously concluded that unreviewed administrative agency findings

---

[3] The NJLAD and Title VII are analyzed in the same manner. See Hyman v. Atlantic City Med. Ctr., No. CivA 97-795, 1998 WL 135249, at *9 (D.N.J. March 16, 1998) (analyzing the plaintiff's NJLAD and Title VII claims together because "[i]t has long been recognized by the New Jersey Courts that Title VII and the NJLAD serve the purpose of eliminating the same kinds of employment discrimination").

can never be accorded issue preclusive effect in subsequent Title VII proceedings"). Therefore, an unreviewed finding by an administrative law judge cannot be the basis for collateral estoppel in a subsequent Title VII or NJLAD claim. See Caver v. City of Trenton, 420 F.3d 243, 259 (3rd Cir. 2005) ("[B]ecause the ALJ's findings were not reviewed by any court of law in this case, they can have no binding effect on the District Court in deciding [the plaintiff's] Title VII claim.").

In the present case, Mrs. Garcia and four other former employees of PCSO previously brought an action before the Office of Administrative Law on the issue of retaliation. In that case, an administrative law judge found that the layoffs were made in good faith, and the Civil Service Commission subsequently adopted these findings. However, because this finding was never reviewed by a court, collateral estoppel is inappropriate. Because this is the only argument that Defendant makes with respect to Mrs. Garcia, summary judgment is denied.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is **granted in part and denied in part**.

Dennis M. Cavanaugh, U.S.D.J.

Date: September 27, 2013
Original: Clerk's Office
Cc: All Counsel of Record
File

8